MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 20
Docket:      BCD-24-172
Argued:      November 14, 2024
Decided:     February 25, 2025

Panel:       STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.

GENERAL HOLDINGS, INC. et al.

v.

EIGHT PENN PARTNERS, L.P. et al.

MEAD, J.

[¶1]  Eight Penn Partners, L.P. appeals from a judgment entered in the Business and Consumer Docket (*Duddy, J.*) granting General Holdings, Inc. and Preservation Holdings, LLC relief by declaring invalid a purported transfer of the limited partnership interests in four limited partnerships from U.S.A. Metropolitan Tax Credit Fund II, L.P. (Metropolitan) and U.S.A. Institutional Tax Credit Fund, IV, L.P. (U.S.A. Institutional) to Eight Penn.  We affirm the judgment.

## I.  BACKGROUND

### A.    Facts

[¶2]  "The court found the following facts by a preponderance of the evidence, and these facts are supported by the trial record."  *Lincoln v. Burbank*,

2016 ME 138, ¶ 7, 147 A.3d 1165.  In the 1990s, Pamela Gleichman, a real estate developer, established four affordable housing developments in Pennsylvania as limited partnerships, using nearly identical partnership agreements for each one.

[¶3]  The four limited partnerships had an identical partnership structure: two general partners and one limited partner.  Gleichman herself and an entity called Gleichman & Co., Inc., which Gleichman wholly owned at the time, served as the two general partners.  Metropolitan held a limited partnership interest in three of the housing developments, and U.S.A. Institutional held an interest in the fourth.  Both Metropolitan and U.S.A. Institutional were controlled by Richman Asset Management.

[¶4]  Around 2010, Gleichman and her husband, Karl Norberg, took out a loan to finance a different development, pledging as collateral all of the outstanding shares of Gleichman & Co.  Later, Gleichman and Norberg defaulted on the loan, and the shares of Gleichman & Co. were put up for sale at a foreclosure auction.  Just before the foreclosure auction, Gleichman & Co. was renamed General Holdings, Inc.  Rosa Scarcelli, Gleichman's daughter, had worked with her mother since the early 1990s, but their relationship soured in the 2000s.  Scarcelli purchased all of General Holdings' outstanding shares

through her company, Preservation Holdings, at the foreclosure auction in March 2014. Richman, on behalf of Metropolitan and U.S.A. Institutional, never objected to the change of control of General Holdings, nor did anything suggest that General Holdings' status as a general partner had changed.

[¶5] In February 2018, a representative of Richman wrote to Gleichman, expressing a desire to sell Metropolitan's and U.S.A. Institutional's limited-partner interests in the four affordable housing partnerships back to Gleichman. Later that year, Richman executed a transfer of Metropolitan's and U.S.A. Institutional's interests in the four affordable housing development partnerships to Eight Penn Partners, L.P. (a limited partnership comprised of Gleichman, Norberg, Gleichman's two sons, and a business associate) for approximately $10,000. Gleichman, as one of the general partners in each of the four affordable housing partnerships, consented to the transfer. General Holdings, as the other general partner, was not asked about, nor did it consent to, the transfer of the interests to Eight Penn. Correspondence between Richman representatives and Rosa Scarcelli's business associates indicates that Richman was aware that Gleichman no longer controlled General Holdings and that Preservation Holdings was the controlling shareholder when Richman transferred its interests to Eight Penn.

**B.    Procedure**

[¶6]  On May 6, 2020, General Holdings and Preservation Holdings filed a complaint in the Superior Court against Eight Penn, Metropolitan, and U.S.A. Institutional.  The action was later transferred to the Business and Consumer Docket.  Count I sought a declaratory judgment, asking the court to declare that Preservation Holdings was the sole shareholder of General Holdings; that Gleichman had no interest in General Holdings; that Metropolitan and U.S.A. Institutional had not and could not transfer their limited partnership interests in the four affordable housing partnerships without General Holdings' prior consent; and that Eight Penn had acquired no interest as a limited partner in the four affordable housing partnerships.  Count II sought injunctive relief, asking the court to rescind the transfer by Metropolitan and U.S.A. Institutional of their limited partnership interests in the four affordable housing partnerships to Eight Penn.

[¶7]  In December 2021, Eight Penn filed a motion for summary judgment requesting judgment in its favor on General Holdings' and Preservation Holdings' claims.  In April 2022, the court denied the motion, finding the language of section 6.01 of the partnership agreements to be ambiguous as to whether General Holdings remained a general partner with management rights

after Preservation Holdings acquired the shares of General Holdings at a foreclosure auction.[1] The court left the issue of ambiguity for resolution at trial in order to hear extrinsic evidence to shed light on the intent of section 6.01.

[¶8] The court held a two-day trial on February 14 and 15, 2024. The court's judgment made findings of facts and drew conclusions of law in holding for the plaintiffs on Count I. The court, considering section 6.01 in context with the evidence produced at trial, interpreted the provision to mean that General Holdings was a general partner with management rights. The court declared (1) that Preservation Holdings is the sole shareholder of General Holdings; (2) that Pamela Gleichman has no interest in General Holdings; (3) that General Holdings is a general partner of the four affordable housing partnerships and has not been removed or dissociated as a general partner; (4) that Metropolitan and U.S.A. Institutional did not transfer their interests to Eight Penn and could not do so without General Holdings' prior consent; (5) that General Holdings has never consented to the transfer of Metropolitan's and U.S.A. Institutional's interests to Eight Penn; and (6) that Eight Penn acquired no interest as a limited partner in any of the four affordable housing partnerships. The court did not

---

[1] Section 6.01 of the partnership agreements discusses the transfer of interests in a general partner. The text and analysis of section 6.01 appear in the discussion section. *See infra* ¶¶ 12-14.

grant the plaintiffs injunctive relief (Count II) because the plaintiffs represented to the court in post-trial briefing that injunctive relief was unnecessary and that the declaratory judgment alone would be sufficient for the parties to implement the judgment. Eight Penn did not seek further findings pursuant to M.R. Civ. P. 52(b) and timely appealed. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

**A.** **The purported transfer of the limited partnership interests to Eight Penn was invalid.**

[¶9] We interpret partnership agreements according to the principles of contract law. *See* 31 M.R.S. § 1310(1) (2024) ("It is the policy of this chapter to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements."); *Cumberland Cnty. Power & Light Co. v. Gordon*, 136 Me. 213, 218, 7 A.2d 619, 622 (1939) ("A partnership is usually defined to be a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that there shall be a community of profits thereof between them."). Generally,

> [w]e construe contracts in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others. Ultimately, we seek

to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless.

*Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244 (citation and quotation marks omitted).

[¶10]   In reviewing the trial court's interpretation of a contract, "the proper standard of review depends on whether the contract language at issue is ambiguous, which we determine de novo." *55 Oak St. LLC v. RDR Enters., Inc.*, 2022 ME 28, ¶ 15, 275 A.3d 316.   "Contract language is ambiguous when it is reasonably susceptible of different interpretations." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quotation marks omitted).   "If a contract is ambiguous, this Court reviews the interpretation of the contract for clear error by the fact finder.   If a contract is unambiguous, this Court reviews its language de novo."   *55 Oak St.*, 2022 ME 28, ¶ 15, 275 A.3d 316 (citation omitted).   Here, we conclude, as did the trial court, that the language at issue in the partnership agreements is ambiguous.

[¶11]   Section 9.02(a) of the four affordable housing partnership agreements provides that "[u]nder no circumstances will any offer, sale, transfer, assignment, hypothecation or pledge of any Limited Partner Interest be permitted unless the General Partners shall have Consented, which Consent may not unreasonably be withheld."   Therefore, a valid transfer of the limited

partner interests to Eight Penn required the consent of both Gleichman and General Holdings as the two general partners.

[¶12]  Article VI of the four affordable housing partnership agreements concerns "Changes in Partners."  Section 6.01 provides:

(a) A General Partner may withdraw from the Partnership or sell, transfer or assign his or its Interest as General Partner (or a controlling interest in the General Partner) only with the prior Consent of the Investment Partnership, and of the Agency and/or the Lender, if required, and only after being given written approval by the necessary parties as provided in Section 6.02 of the General Partner(s) to be substituted for him or it or to receive all or part of his or its Interest as General Partner.

[¶13]  Eight Penn argues that section 6.01 required the limited partner[2] to have consented to the change of control of the General Holdings' general partnership interest from Gleichman to Preservation Holdings in order for General Holdings to retain its management prerogatives.  Eight Penn reasons that because Metropolitan and U.S.A. Institutional never explicitly gave their consent to the change of control of General Holdings, General Holdings was not entitled to participate in the management of the partnerships and General Holdings' consent was not required for Metropolitan and U.S.A. Institutional to transfer their interests to a third party.  Conversely, General Holdings contends

---

[2]  Article II of the four affordable housing partnership agreements defined "Investment Partnership" as the limited partner, either Metropolitan or U.S.A. Institutional.

that the plain language of the provision indicates that it was intended to apply only to voluntary transfers, and therefore, an involuntary sale at a foreclosure auction would not require the limited partner's consent. Because this language is reasonably susceptible of multiple interpretations, section 6.01 is ambiguous as to whether it was intended to apply to both voluntary and involuntary transfers.[3]

[¶14] After construing section 6.01 in context with evidence admitted during the trial, the court found that the section applied only to voluntary transfers. The court concluded that section 6.01 did not apply here because the transfer of the controlling interest in General Holdings from Gleichman to Preservation Holdings was the result of a foreclosure auction. Applying section 9.02(a), the court determined that because General Holdings remained a general partner with management rights, its consent was required for a valid

---

[3] The current version of the Maine Uniform Limited Partnership Act provides that a purchaser at a foreclosure sale is not entitled to participate in the management of the limited partnership. *See* 31 M.R.S. §§ 1382(1), 1383(2) (2024). This provision of the act reflects the principle in partnership law that partnerships should be based on mutual consent. *See A. Willmann & Assocs. v. Penseiro*, 158 Me. 1, 4-6, 176 A.2d 739, 741 (1962) ("[N]o one had the right to make him become a partner or joint adventurer with a stranger with whom he did not care to be associated."). However, the Act does not apply retroactively to limited partnerships formed before July 1, 2007, and therefore it has no effect on the four affordable housing limited partnerships, which were formed in 1995 and 1996. 31 M.R.S. § 1453 (2024). Our case law prior to the enactment of the Act did not directly address whether a transferee of a controlling interest in a general partner was entitled to participate in the management of the limited partnership.

transfer of the limited-partner interests to Eight Penn. The court held that because General Holdings never consented, the transfer was invalid.

[¶15] Because the agreements are ambiguous, we review the trial court's findings and interpretation for clear error. *55 Oak St.*, 2022 ME 28, ¶ 15, 275 A.3d 316. "A finding of fact is clearly erroneous when (1) no competent evidence supporting the finding exists in the record; (2) the fact-finder clearly misapprehended the meaning of the evidence; or (3) the force and effect of the evidence, taken as a whole, rationally persuades us to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Carter v. Voncannon*, 2024 ME 65, ¶ 20, 327 A.3d 9 (quotation marks and alteration omitted). Eight Penn did not seek further findings pursuant to M.R. Civ. P. 52(b). Accordingly, "we assume the trial court made all findings necessary to support its judgment, if those findings are supported by the record." *Young v. Lagasse*, 2016 ME 96, ¶ 13, 143 A.3d 131. The court's finding that section 6.01 does not apply to transfers caused by a foreclosure auction is supported by the evidence. Furthermore, nothing indicates that the court misapprehended the meaning of the evidence, nor are we persuaded to a certainty that the findings are so against the preponderance of the believable evidence that it does not represent

the truth and right of the case.  Therefore, the court did not err in declaring that General Holdings remained a general partner with management rights and that the transfer to Eight Penn was invalid.[4]

The entry is:

Judgment affirmed.

---

John S. Campbell, Esq. (orally), Campbell & Associates, P.A., Portland, for appellant Eight Penn Partners, L.P.

James D. Poliquin, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for appellees General Holdings, Inc. and Preservation Holdings, LLC

Business and Consumer Docket docket number CV-2020-28
FOR CLERK REFERENCE ONLY

---

[4] Eight Penn's arguments concerning whether the trial court abused its discretion in not finding unclean hands and in issuing an incomplete declaratory judgment are unpersuasive.  There is support in the record for the determination that the conduct of both parties was problematic and that therefore the balance of the equities does not support Eight Penn's equitable defense of unclean hands.  *See Hamm v. Hamm*, 584 A.2d 59, 61-62 (Me. 1990).  Moreover, we have held that M.R. Civ. P. 59(e) is the proper vehicle for curing an ambiguous or incomplete declaratory judgment, and Eight Penn did not file a Rule 59(e) motion in this case.  *See, e.g.*, *Hoche v. Hoche*, 560 A.2d 1086, 1088 (Me. 1989); *Medeika v. Watts*, 2008 ME 163, ¶ 7, 957 A.2d 980.